NEELEMAN LAW GROUP, P.C.      The Honorable Timothy W. Dore
1403 8th Street                       Location: Seattle
Marysville, WA  98270
Telephone: (425) 212-4800
Facsimile: (425) 212-4802

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re: | : | Case No.: 21-10092 |
| BRETT S ROBERTS & BRITT G ROBERTS | : | |
| | : | DEBTORS' <u>AMENDED</u> PLAN OF |
| Debtor(s). | : | REORGANIZATION |
| | : | |
| | : | |

## <u>ARTICLE I</u>

### BACKGROUND

**1.01.** <u>**Description and History of the Debtor's Business**</u>

The debtors-in-possession Brett S Roberts and Britt G Roberts (hereinafter "Debtors")

filed a petition under Chapter 13 of the United States Bankruptcy Code on January 18, 2021 (the

"Petition Date"), which was converted to a case under Chapter 11on March 26, 2021 (Dkt. No.

60).  Also, on March 26, 2021 the Debtors filed an amended bankruptcy petition (Dkt. No.63)

electing to proceed under Subchapter V of Chapter 11 (herein the "Conversion Date").

The Debtors currently reside at 15128 445th Ave., SE, North Bend 98045 with their 2

children ages 12 and 14.  Debtor, Britt Roberts is currently employed by Creekside Dental Arts

as a dental hygienist receiving gross compensation of approximately $7,900.00 per month.   The

Debtor, Brett Roberts currently is a joint operator of Built NW, LLC, a Washington Limited

Liability Company, headquartered in Kent, Washington owned jointly by Debtors (50%) and

Jeremy Minor (50%).   Debtor, Brett Roberts receives owner draws from Built NW, LLC of

approximately $7,000.00 monthly.

1

Beginning in 2008 and continuing through 2020, the Debtors were the sole members of Roberts Custom Homes, LLC (herein "RCH"), a Washington Limited Liability Company headquartered in North Bend Washington. During its period of operation, RCH operated as a full-service contractor providing residential and commercial construction services to businesses and homeowners in Western Washington State. RCH ceased doing business at the end of 2020 due to the cost of pending litigation as well as economy related issues.

The Debtors currently own 100% membership share of 2nd Street Project, LLC a Washington Limited Liability Company (herein "2nd Street"). The company acquired 2 (two) unfished attached townhomes from the debtors on or about September 2, 2020, located at 324 East 2nd Street, North Bend, WA 98045 (Units A & B). Townhouse Unit A was sold on March 28, 2021 (See Section 1.05 below).

**1.02**. **Insiders of the debtor**

Other than the Debtor, there are no insiders.

**1.03.** **Events Leading to Chapter 11 Filing**

Prior to the Petition Date, RCH and the Debtors were defendants and counterclaimants in 2 (two) lawsuits (Grewal and Bankson) filed in the Superior Court of King County. The Grewal lawsuit (*Rahul Grewal & Brandi Grewal v. Roberts Custom Homes, LLC 20-2-05 863-7 SEA*) named the Debtors personally and RCH as defendants. In connection with the lawsuits, the Debtors have filed counterclaims and asserted affirmative defenses against the moving parties. Defense of RCH and the Debtors is being provided, until concluded, by Kinsale Insurance Company pursuant to a commercial policy held by RCH.

Also prior to the Petition Date, RCH and the Debtors were defendants in a lawsuit for damages filed in the Superior Court of King County by Stewart Title Company seeking to hold

2

RCH and the Debtors liable for damages allegedly incurred relating to an alleged overpayment to RCH at a closing, conducted by Stewart Title Company, of a home built and sold by RCH.

The Debtors filed this bankruptcy petition and propose this Plan of Reorganization provide for a fair and orderly distribution to their liquidated obligations.

### 1.04. <u>Management of the Debtor Before and During the Bankruptcy</u>

The Debtors, Brett and Britt Roberts will jointly manage the affairs of the estate during the pendency of the bankruptcy. As referenced above, Debtor, Brett Roberts, is actively engaged in business as a joint (50%) member of Built NW, LLC and Britt Roberts works full time as a Dental Hygienist. Notwithstanding these activities, the Debtors are committed to devote sufficient time and resources to the estate to ensure the successful completion to their Plan of Reorganization as provide herein.

### 1.05 <u>Significant Events During the Bankruptcy Case</u>

On April 20, 2021, the Court entered an Order (Dkt. No. 88) granting relief from the Automatic Stay so that the Grewal litigation referenced in Section 1.03 above could proceed in the state court. The Debtors sought and received authority from the Bankruptcy Court on May 13, 2021 (Dkt. No. 107) to employ Hans Juhl of Ryan, Swanson, and Cleveland to represent the estate as special counsel to prosecute the Debtor's counterclaims and affirmative defenses associated with the Grewal lawsuit.

Upon completion of the townhouses referenced in Section 1.01 above, one of the townhomes (Unit A) was sold on May 28, 2021 for the gross sales price of $715,000.00 which netted 2nd Street the sum of $3,115.96, after payment of allocatable expenses. The net proceeds from the sale of Unit A are currently held in the trust account of Neeleman Law Group, P.C. The debtors anticipate that the second townhome (Unit B) will be sold on or before June 30, 2021 for

3

the sum of $750,000.00 with anticipated net proceeds of approximately $180,000.00 remaining after payment of the remaining allocatable expenses. The net proceeds from the sale of the 2nd Street Unit B will also be deposited into the Neeleman Law Group, P.C. trust account. The combined net proceeds from the sale of the 2nd Street townhomes will remain in trust pending distribution pursuant to the terms of the debtors confirmed Plan of reorganization.

On June 11, 2021, the Debtors participated in a Bankruptcy Rule 2004 examination conducted by counsel for creditors in the Rahul & Brandi Grewal and Stewart Title Company. The Debtors are currently in the process of supplementing documentation requesting by the deposing parties.

**1.06   Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**1.07   Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets as of the petition date are listed in **Exhibit A**.

Prior to the circulation of the Plan, Debtors will file  monthly financial reports for April and May 2021.   The information shown on the monthly reports includes the Debtors' income from all sources and details monthly living expenses.   Copies of the monthly reports are available online through the court's electronic filing system and/or may be viewed in the bankruptcy court clerk's office.

4

## ARTICLE II
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11, Subchapter V of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtors in the manner and constant with the terms contained herein.

This Plan provides for unclassified administrative claims, six classes of secured claims, and one class of unsecured claims, and no classes of equity security holders.

Each creditor and equity security holder should refer to Articles III through V, of this Plan for information regarding the precise treatment of its claim. Pursuant to 11 USC §1181(b) of the United States Bankruptcy Code, unless the Court orders otherwise, a Disclosure Statement providing further detail as pertaining to background and treatment of claims treatment is not required and will not be filed and circulated in this case. Accordingly, creditors and equity security holder should rely on the contents of this Plan only in determining whether to accept or reject this Plan's treatment of your claim.

**YOUR RIGHTS MAY BE AFFECTED BY CONFIRMATION OF THIS PLAN. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

**3**.01      <u>Class 1</u>      Secured claim of Banner Bank

**3.02**      <u>Class 2</u>      Secured Claim of Alaska USA Federal Credit Union

**3.03**      <u>Class 3</u>.      Secured claim of Alaska USA Federal Credit Union

**3.04**      <u>Class 4</u>      Secured Claim of Brian & Ingela Hense

**3.05**      <u>Class 5</u>      Secured Claim of Bank of America

**3.06**      <u>Class 6</u>      Secured Claim of Sno Falls Credit Union

**3.07**      <u>Class 7</u>.      All general unsecured claims allowed under § 502 of the U.S. Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

## AND PRIORITY TAX CLAIMS

**4.01**    <u>**Unclassified Claims.**</u>    Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**4.02**    <u>**Administrative Expense Claims**</u>. Pursuant to 11 U.S.C. 1191(e) and 11 U.S.C. § 507(a)(2) each holder of an administrative expense claim allowed under §503 of the Code will be paid pursuant to the Plan term as provided for in Article V below.

**4.03**    <u>**Priority Tax Claims**</u>. Each holder of a priority tax claim will be paid the amount of its allowed claim in full as provide in Article V below.

6

# ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**5.01** The Debtor will pay a Plan payment to the Disbursing Agent in the amount of $3765.00 per month beginning on the 5th day of the month following confirmation of the plan and continuing for 60 months. Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| **Class 1 – Banner Bank** | Unimpaired | The claim of Banner Bank secured by a Trust Deed on the debtor's home and real property, is unimpaired and will be paid directly by the Debtor pursuant to the contract or in advance of the contractual obligation. |
| **Class 2 – Alaska USA Federal Credit Union** | Impaired | The claim of Alaska USA Federal Credit Union secured by the 2017 Ford Mustang in the amount of $13,643.75 will be paid monthly payments of $270.00 beginning on the 5th day of the month following the date of confirmation until paid in full. Interest to accrue from the date of confirmation at the rate of 4% per annum. |
| **Class 3 – Alaska USA Federal Credit Union** | Impaired | The claim of Alaska USA Federal Credit Union secured by the 2009 Ford F-350 in the amount of $4,362.24 will be paid monthly payments of $86.00 beginning on the 5th day of the month following the date of confirmation until paid in full. Interest to accrue from the date of confirmation at the rate of 4% per annum |
| **Class 4 – Brian & Ingela Hense** | Impaired | The claim of Brian and Ingela Hence in the amount of $69,000.00 secured by the real property located at 34 Long Drive Pateros, WA 98846 will be paid in full on or before 6 months from the 5th day of the month following the date of confirmation. Interest to accrue from the date of confirmation at the rate of 4% per annum. Any funds remaining after paying Class 4 claim in full will be distributed pro rata to Class 7 claims within 30 days of the sale of the real property referenced above. |

7

| | | |
|---|---|---|
| **Class 5 – Bank of America** | Impaired | The claim of Bank of America secured by the 2016 Ford Explorer in the amount of $5,278.09 will be paid monthly payments of $104.00 beginning on the 5th day of the month following the date of confirmation until paid in full. Interest to accrue from the date of confirmation at the rate of 4% per annum |
| **Class 6 – Sno Falls Credit Union** | Impaired | The claim of Sno Falls Credit Union secured by the 2019 Chevy Silverado Ford Explorer in the amount of $66,375.42 will be paid monthly payments of $1,305.00 beginning on the 5th day of the month following the date of confirmation until paid in full. Interest to accrue from the date of confirmation at the rate of 4% per annum |
| **Class 7 – General Unsecured Claims** | Impaired | Each holder of an allowed general unsecured claim will be paid a pro rata share of $2,000.00 per month beginning on the 5th day of the month following the date of confirmation for a 60 months plus a pro rata share, within 30 days of the 5th day of the month following the date of confirmation, of all available funds remaining from the funds held in trust from the sale of the 2nd Street property after payment in full of the unclassified claims referenced below. Payment to Class 7 claims may be augmented by any excess funds available after liquidating the real property referenced in the treatment of Class 4 above to pay the liquidation value as referenced in Exhibit C. |
| **Unclassified Priority Claim of Internal Revenue Service** | n/a | The Debtor will pay the allowed priority claim of the Internal Revenue Service in full within 30 days of the 5th day of the month following the date of confirmation with funds held in trust from the sale of the 2nd Street property. Interest will accrue on any unpaid balance at the federal rate pursuant to IRC 6621 which is currently 5%. |
| **Unclassified Priority Claim of the Washington State Department of Revenue** | n/a | The debtor will pay the allowed priority claim of the Washington State Department of Revenue, in full within 30 days of the 5th day of the month following the date of confirmation with funds held in trust from the sale of the 2nd Street property. Interest will accrue on the unpaid balance at the statutory rate of 4%. |

8

| | | |
|---|---|---|
| **Unclassified Claim of Trustee Virginia Burdette** | n/a | The approved administrative claim of Trustee Virginia Burdette will be paid in full within 30 days of the 5th day of the month following the date of confirmation with funds held in trust from the sale of the 2nd Street property. |
| **Unclassified Claim of Neeleman Law Group, P.C.** | n/a | The approved administrative claim of Neeleman Law Group, P.C. will be paid in full within 30 days of the 5th day of the month following the date of confirmation with funds held in trust from the sale of the 2nd Street property. |

.

## **ARTICLE VI**

## **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**6.01** **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**6.02** **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**6.03** **Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

9

## ARTICLE VII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as provided in Article IX: n/a

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN

Debtor will make monthly payments pursuant to the terms of this Plan as referenced in Article V above. The source of the income to make the Plan payments will be from wages received by Debtor, Britt G Roberts from her employment and Brett S Roberts from business income. Attached hereto as **Exhibit B,** are debtor's projected Income and Expenses from July 1, 2021 through June 30, 2022. It is anticipated that the debtors' income will remain constant throughout the 5-year Plan term. Monthly payments will be paid by debtor to the disbursing agent, as designated in Article XI on the date specified who will then tender the payment pursuant to the Plan terms. Debtor will begin making all designated Plan payments beginning on the 5th day of the month following the date of confirmation of this Plan and payments will continue on the 5th day of each month thereafter. Payments will be distributed pursuant to Article V. It is anticipated that there will be enough monthly income from Debtors' earnings

10

and business income to pay reasonable and necessary living expenses and the anticipated Plan payments as they become due.

## ARTICLE IX

### GENERAL PROVISIONS

**9.01** **Definitions and Rules of Construction**. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**9.02** **Effective Date of Plan**.   The Effective Date of this Plan is the date of confirmation.

**9.03** **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.04** **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**9.05** **Captions**.    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**9.06** **Controlling Effect**.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Washington govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE X

### DISCHARGE

**10.01**   Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a Discharge.

**10.02**. **Consensual Plan**   This Plan may be confirmed if it meets all provisions of 11 U.S.C. §1129(a) except for 11 U.S.C. §1129(a)(15) wherein the Plan is accepted by every class of claims and interests under the Plan.  In that event, the Court will grant a Discharge upon confirmation which will discharge the debtor from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

**10.03**.  **Cramdown Plan**   This Plan may also be confirmed without the consenting vote of an impaired class so long as it does not discriminate unfairly and is fair and equitable pursuant to 11 U.S.C. §1191(b).   Confirmation of a Cramdown Plan does not discharge any debt provided for in this Plan until the court grants a Discharge on completion of all payments under this Plan.

**10.04**.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### ARTICLE XI

### DISBURSING AGENT

**11.01**.  If this Plan is confirmed as a Cramdown Plan as described in Section 10.03 herein, the Trustee will serve as the disbursing agent during the initial 60 months of the Plan.   If payments, in the form of certified funds, are received prior to the 20th of each month, the Trustee will make payments pursuant to the terms set forth in Article V of the Plan and the payments will be disbursed by the Trustee no later than the end of the month in which the payments are

received.  Any payment received after the 20th of each month, will be disbursed by the Trustee no later than the end of the following month.

**11.02**    If this Plan is confirmed as a Consensual Plan, the services of the Trustee will be terminated upon substantial consummation of the Plan and Neeleman Law Group, P.C. will serve as the disbursing agent during the initial 60 months of the Plan.  All payments will be held in a segregated trust account.   If payments, in the form of certified funds, are received prior to the 27th of each month, Neeleman Law Group, P.C. will make payments pursuant to the terms set forth in Article V of the Plan and the payments will be disbursed by Neeleman Law Group, P.C. no later than the end of the month in which the payments are received.  Any payment received after the 27th of each month, will be disbursed by Neeleman Law Group, P.C. no later than the end of the following month.

 **11.03**.  If Neeleman Law Group, P.C. acts as the disbursing agent, the firm is authorized to be compensated the sum of $200.00 per month, plus applicable postage, for services rendered in acting as the disbursing agent for this Plan without further application to the Court.

**11.04**.  If the Trustee acts as the disbursing agent, the Trustee will be compensated at her regular and customary rate, plus applicable postage, for services rendered in acting as the disbursing agent upon Bankruptcy Court approval.

**11.05.**  If the Debtor makes a partial Plan payment, to the extent funds are available, funds will be disbursed first to administrative claims, specifically payments to the Disbursing Agent and Trustee's fees, then to claims in the following order: secured claims, administrative attorney's fees, priority claims, and unsecured claims.  If funds are not available to make the payment in full pursuant to Article V, payments will be made on a prorated basis for each

13

classification of claims. If funds are available, payments will be made in the order stated above and will be paid pursuant to Article V.

## ARTICLE XII

## OTHER PROVISIONS

**12.01**. In a Consensual Plan, on the Effective Date of the Plan, all property of the Debtor's estate will vest in the reorganized Debtors pursuant to 11 U.S.C. §1141(b), free and clear of all claims and interests, except that the lien of secured creditors shall be retained until all required payments to the creditors under the Plan are completed.

**12.02**. Creditors may not take any actions (including, without limitation, lawsuits or other legal actions, levies, attachments, or garnishments) to enforce or collect either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan. Provided that the Debtor does not materially default under the Plan, creditors shall be prohibited from taking any enforcement or collection actions or any kind against the Debtor.

**12.03**. The Bankruptcy Court retains jurisdiction until all Plan payments have been made.

**12.04**. Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Neeleman Law Group
1403 8th Street
Marysville, WA 98270

14

Email: jneeleman@expresslaw.com
Telephone: (425) 212-4800
Facsimile: (425) 212-4802

Virginia Burdette
5506 6th Avenue South, Suite 207
Seattle, WA 98108
E-mail: vab@andrewsburdette.com
Telephone: (206) 441-0203
Facsimile: (206) 624-2631

**12.05**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**12.06  Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan; however, the Court may require re-voting on the Plan.  The Plan Proponent may modify the Plan after confirmation in accordance with the provisions stated in 11 U.S.C. §1193(c).

## ARTICLE XIII

### DEFAULT

**13.01**  If the Reorganized Debtor fails to make any payment to the Disbursing Agent which renders the Disbursing Agent unable to make payments under the Plan, or to perform any other obligation required under the Plan for more than fifteen (15) days after the time specified in the Plan, the affected creditor may serve upon Debtor and Trustee a written notice of default. The Reorganized Debtor is in material default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default (plus 3 days for mailing) to either:  (i) to cure the default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.   If the Reorganized Debtor remains in material default after the time period specified above, creditors may proceed with the remedies as specified below.

15

**13.02  Priority Claims**. If the Reorganized Debtor fails to make a payment on account of an ALLOWED PRIORITY CLAIM, the holder of such CLAIM shall be entitled to bring an action against the Reorganized Debtor in a court of competent jurisdiction, provided that at least 30-days' notice of intent to bring such action is first given to the Reorganized Debtor, the Trustee, and its undersigned counsel. Alternatively, if, after 30 days written notice, a default remains uncured, the holder of the ALLOWED PRIORITY CLAIM shall be entitled to recover all amounts due and to become due to it under the PLAN by pursing all remedies, including administrative or judicial, as allowed by state law.

**13.03  Secured Claims**. If the Reorganized Debtor fails to make a payment to holder of an ALLOWED SECURED CLAIMS, the holder of such CLAIM shall be entitled to proceed in accordance with the underlying agreement or agreements between the CLAIMANT and the Reorganized Debtor provided that at least 30-days' notice of intent to take such action is first given to the Reorganized Debtor, the Trustee, and its undersigned counsel and in the absence of an order prohibiting the holder of the ALLOWED SECURED CLAIM from proceeding with its contractual rights.

**13.04  Unsecured Claims**. If the Reorganized Debtor fails to make a payment on account of an ALLOWED UNSECURED CLAIM in CLASS 5, the holder of such CLAIM shall be entitled to bring an action against the Reorganized Debtor in a court of competent jurisdiction, provided that at least 30-days' notice of intent to bring such action is first given to the Reorganized Debtor, the Trustee, and its undersigned counsel. If such an action is commenced, after default and notice, the holder of the ALLOWED CLAIM shall be entitled to recover all amounts due and to become due to it under the PLAN.

If the Plan is confirmed as a Cramdown Plan and Debtor defaults on the Plan payment and subsequently fails to cure after the written 30 days' notice as referenced above, Debtor will liquidate non-exempt assets to protect the holders of claims or interests.

**13.05** __Additional Default Remedies__.  In addition, or in the alternative to the other remedies for default previously set forth above, a creditor or party in interest, including the SBRA Trustee, may bring a motion to convert or dismiss the case under § 1112(b), after the PLAN is confirmed, if there is a default in performing the PLAN.

**13.06**  The Disbursing Agent will make their receipts/disbursements available to any party, as requested.  The Disbursing Agent shall give notice of any default to the SBRA Trustee and any other party, as requested.  If the Debtor is in default of the Plan, and fails to liquidate non-exempt assets within 60 days of the date of default, the SBRA Trustee or any party is authorized to reopen the case and move for liquidation, by SBRA Trustee, of nonexempt assets, pursuant to court order.

## ARTICLE XIV

### CONFIRMATION REQUIREMENTS AND PROCEDURES

**14.01** To be confirmable, a Consensual Plan must meet the requirements listed in 11 U.S.C. § 1129(a) not including the contribution of all disposable income requirement of 11 U.S.C § 1129(a)15 of the Bankruptcy Code. These include the requirements that; the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.

**14.02**  To be confirmable, a Cramdown Plan must be fair and equitable and meet the requirements listed in 11 U.S.C. §1129(a) but does not require that every class of claims and interest has accepted the plan (11 U.S.C. §1129(a)(8)) nor that at least one impaired class has accepted the Plan (11 U.S.C 1129(a)(10)), The cram down Plan also requires that the Debtor contribute all disposable income to the Plan during the Plan term and that the Plan payment be not less than the net disposable income of the Debtor (11 U.S.C §1191(c)).

**14.03**. **<u>Who May Vote or Object</u>**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Plan Proponent believes that class 1 is unimpaired and classes 2 through 7 are impaired and that holders of claims in each of the impaired classes are therefore entitled to vote to accept or reject the Plan.

*1.    What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the

claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim was May 13, 2021.***

  2.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

  3.    *Who is **Not** Entitled to Vote*

The holders of the following six types of claims and equity interests are *not* entitled to vote:

  a.  holders of claims and equity interests that have been disallowed by an order of the Court;

  b.  holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

  c.  holders of claims or equity interests in unimpaired classes;

  d.  holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

  e.  holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

  f.  holders of administrative expense claims.

***EVEN IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN,***

***YOU HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.***

    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

**14.04**. **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm a Consensual Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by a cram down on non-accepting classes, as discussed later in Section 14.04 [2].

    1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

    2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm a Cramdown Plan if the Plan meets the requirements referenced in Section 14.02 above. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the

requirements for consensual confirmation except for those requirement referenced in Section 14.02 above does not discriminate unfairly and is a fair and equitable toward each impaired class that has not voted to accept the Plan (11 U.S.C. §1191(b)).

*YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A CRAMDOWN CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.*

**14.05 Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders **who do not accept the Plan** will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached as **Exhibit C** and provides for $280,994.07 for unsecured priority and non-priority creditors. The Debtors received $3,316.02 from the sale of real property (Unit A), of which the same has been tendered to counsel and is currently held in trust. The Debtors sold a second property (Unit B) and proceeds in the amount of $178,936.21 are in the process of being tendered to counsel to be held in trust. The total proceeds from the sale of real property are $182,252.23. Debtors received a refund check on behalf of the closed business, Roberts Custom Homes, in the amount of $8,826.51 which will also be used for distribution to creditors and will be held in trust. The total available funds held in trust is anticipated to be $191,078.74.

The Plan is feasible and meets the liquidation analysis providing for $280,994.07 to priority and non priority unsecured creditors:

1. Estimated distribution of funds held in trust:

    a. Estimated attorney's fees - $40,000.00

b. Estimated Trustee fees - $4,000.00

c. Estimated priority claims - $50,952.00 (IRS) & $80,000 (Dept of Revenue)

d. Estimated amount available to non-priority unsecured claims - $16,126.74

2. Amount available to priority and non-priority unsecured claims

a. Monthly payments to non-priority unsecured claims: $2,000 x 60 = $**120,000.00**

b. Distribution to IRS priority claim from funds held in trust: $**50,952.00**

c. Distribution to Dept of Revenue priority claim from funds held in trust: $**80,000.00**

d. Distribution to non-priority claims from funds held in trust: $**16,126.74**

e. Anticipated distribution to non-priority claims from sale of real property: $**13,916.07.**

Total: **$280,994.07**

**14.06**. **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The plan proponent believes that the Debtor will have funds on hand to begin making payments on the 5th day of the month following confirmation of the plan as proposed in Article V.

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

22

The plan proponent must also show that it will have an income stream over the life of the Plan to make the required Plan payments. Based on the Debtor's projections, under the proposed Plan, the Debtor's funds are sufficient to make the payments as proposed over the life of the Plan.

***YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR
IF YOU HAVE ANY QUESTIONS PERTAINING
TO ALL REPRESENTATIONS AND PROJECTIONS CONTAINED HEREIN.***

Dated this 24th day of June, 2021

Respectfully submitted,

_/s/ Brett Roberts_____
Brett S Roberts
Debtor-in-possession

_/s/ Britt Roberts_____
Britt G Roberts
Debtor-in-possession

NEELEMAN LAW GROUP, P.C.

_/s/ Thomas D. Neeleman_
Thomas D. Neeleman
Attorney for Debtor-in-Possession

23